IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ERIK ROBERTO REYES-AGUILAR,       )
                                  )
        Petitioner,                )
                                  )
        v.                         )      1:13CR86-2
                                  )      1:14CV786
UNITED STATES OF AMERICA,          )
                                  )
        Respondent.                )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation as to Ground One of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("Section 2255 Motion") (Docket Entry 61). For the reasons that follow, the Court should deny relief.

INTRODUCTION

This Court (per United States District Judge Catherine C. Eagles) entered a Judgment against Petitioner imposing, inter alia, a prison term of 96 months, upon his guilty plea to conspiracy to distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (Docket Entry 45); see also Docket Entry 1 (Indictment); Docket Entry 34 (Plea Agreement); Docket Entry dated May 7, 2013 (documenting guilty plea); Docket Entry dated Aug. 29, 2013 (documenting sentencing);

Docket Entry 69 (Plea Hrg. Tr.).)[1]  Petitioner did not give notice of appeal.  (See Docket Entries dated Aug. 29, 2013, to present.) He did, however, timely file his instant Section 2255 Motion (Docket Entry 61), followed shortly by a Memorandum of Law in Support (Docket Entry 69), with accompanying affidavit (id. at 10-11).  The United States responded (Docket Entry 71), attaching an affidavit from Ronald Lowy (one of Petitioner's attorneys in his underlying criminal case) (Docket Entry 71-1; see also Docket Entry 23 at 1 (documenting "notice of appearance [by Robert O'Hale of Clifford Clendenin & O'Hale, LLP] as attorney of record for [Petitioner] in [his underlying criminal case]" and stating that Mr. O'Hale "anticipate[d] that he w[ould] act as local counsel, and Ron Lowy from Florida w[ould] act as lead counsel"); Docket Entry 31 at 1 (documenting notice of special appearance (pursuant to Local Rule 83.1(d), as incorporated by Local Criminal Rule 57.1) of "Ronald S. Lowy, Esquire, of Lowy and Cook, P.A." in Petitioner's underlying criminal case).  Petitioner replied.  (Docket Entry 74.)

 The undersigned Magistrate Judge thereafter entered a Text Recommendation proposing that the Court deny relief on Grounds Two through Six of Petitioner's Section 2255 Motion, but defer

---

[1] Parenthetical citations refer to Petitioner's criminal case. Petitioner's sentence fell below the ten-year mandatory minimum prison term otherwise applicable to the offense of conviction, see 21 U.S.C. § 841(b)(1)(A), due to the operation of the "safety-valve," 18 U.S.C. § 3553(f).  (See Docket Entry 79, ¶ II.C.)

adjudication of Ground One of his Section 2255 Motion, pending an evidentiary hearing. (See Text Recommendation dated Dec. 22, 2014; see also Docket Entry 80 (appointing Benjamin Porter as counsel for Petitioner in connection with Ground One).) That hearing now has occurred. (See Docket Entry dated Apr. 15, 2015; Docket Entry 85 (Ground One Hrg. Tr.).) Based on the evidence presented at that hearing and other relevant record material, the Court should deny relief on Ground One.

## DISCUSSION

In Ground One, Petitioner averred as follows:

> Counsel provided ineffective assistance when counsel was requested by [Petitioner] to file a notice of appeal as agreed after sentencing. Counsel provided ineffective assistance when he prevented [Petitioner] from presenting meritotious [sic] defenses. [Petitioner] was denied his fundamental right to effective assistance of counsel by counsels [sic] failure to have sought appellate review.

(Docket Entry 61, ¶ 12(Ground One)(a); see also id., ¶ 11(d) ("Counsel failed to file Notice of Appeal when requested to do so."); id., ¶ 12(Ground One)(b)(2) ("Counsel failed to file notice of appeal when requested to do so."); id., ¶ 15 (identifying counsel in underlying criminal case as "Lowy and Cook, P.A."); id. at 13 (signing Section 2255 Motion under penalty of perjury).)[2]

---

[2] Pin cites to page numbers (as opposed to paragraph numbers) correspond to the page numbers that appear in the footer appended to the document upon docketing in the CM/ECF system.

3

Petitioner's Memorandum of Law in Support of his Section 2255 Motion (which he signed, although not under penalty of perjury (see Docket Entry 69 at 9)) states, in pertinent part, that:

1) "Petitioner was represented by Lowy and Cook, P.A., . . . by both attorney's [sic], Ronald Lowy and Robert O'Hale" (id., ¶ 3);

2) "[u]pon completion of sentencing proceedings and the [C]ourt's imposition of ninety-six months on August 29, 2013, Petitioner <u>instructed counsel to file an appeal of the sentence</u>" (id., ¶ 4 (emphasis added));

3) "Petitioner's wife and family have made several attempts to contact counsel to no avail" (id., ¶ 5);

4) "counsel did not file an appeal nor informed [] Petitioner any reason not do so aftert [sic] Petitioner making said <u>request</u>" (id. (emphasis added));

5) "counsel failed to file a timely appeal despite being <u>instructed</u> that Petitioner <u>was interested in appealing his sentence</u>" (id., ¶ 6 (emphasis added));

6) "Petitioner avers that he <u>instructed appointed [sic] counsel [O'Hale] to file a notice of appeal</u>" (id., ¶ 7 (emphasis added) (brackets (other than for "sic") in original));

7) "Petitioner avers in fact specific sworn affidavit that he had <u>informed counsel to file a direct appeal</u>, and was also under the impression that counsel [O'Hale] had abided by the Petitioner's

4

reasonable <u>request</u>" (<u>id.</u>, ¶ 8 (emphasis added) (brackets in original) (internal parenthetical citation omitted));

8) "counsel [<u>O'Hale</u>] provided ineffective assistance for failure to abide by Petitioner's reasonable <u>request</u> for failure to file a notice of appeal after being <u>instructed</u> to do so" (<u>id.</u>, ¶ 9 (emphasis added) (brackets in original));

9) "<u>Petitioner [instructed] his counsel [O'Hale] to file a timely appeal</u>" (<u>id.</u>, ¶ 16 (emphasis added) (brackets in original); <u>see also</u> <u>id.</u> ("Counsel's failure to file an appeal specifically [sic] being [<u>instructed</u>] to do so by Petitioner [Mr. Reyes-Aguilar] cannot be considered a strategic decision." (emphasis added) (brackets (other than as to "sic") in original)));

10) "counsel[] fail[ed] to file a timely notice of appeal as Petitioner <u>instructed</u> him to do so, also . . . [counsel] ignored [Petitioner's] <u>request</u> and <u>failed to consult</u> with him regarding the benefits or consequences of pursuing an appeal" (<u>id.</u>, ¶ 21 (emphasis added));

11) "counsel was aware that he was obligated to file the appeal as <u>requested</u> to do so" (<u>id.</u>, ¶ 22 (emphasis added)); and

12) "counsel[] fail[ed] to timely file notice of appeal at his <u>requested instructions</u> and <u>failed to consult</u> with [sic] concerning the benefits or consequences of pursuing a direct appeal" (<u>id.</u>, ¶ 23 (emphasis added)).

5

In the separate affidavit (signed by Petitioner under penalty of perjury (see id. at 11)) appended to the foregoing Memorandum, Petitioner averred as follows:

> 1. I, Erik Roberto Reyes-Aguilar, state that on August 29, 2013, during sentencing that this Court informed me that I had a right to appeal and had ten (10) days to file notice of appeal. I, Erik Roberto Reyes-Aguilar, state that I <u>informed both counsels that I wanted to appeal my conviction and sentence</u> since I felt that many of the facts of my case and what was being attributed to me were not in fact accurate and others not true.
>
> 2. I, Eric Roberto Reyes-Aguilar, state that after advising both counsels [Lowy and O'Hale] that I <u>wanted to talk with them concerning the appeal</u>, counsels agreed to come over the [sic] institution (jail) and talk with me concerning the appeal.
>
> 3. I, Eric Roberto Reyes-Aguilar, state that I called defense counsels [sic] office on numerous occasions and left several messages with his secretary concerning my appeal. Defense counsels avoided my phone calls and never answered my messages.
>
> 4. I, Erik Roberto Reyes-Aguilar, state that my wife and family called counsels [sic] office on numerous occasions to find out about the status of my appeal and were never able to talk with counsel personally, but she left messages with counsels [sic] secretary. <u>As of this date, defense counsels has not</u> wrote [sic] me, nor <u>consulted with me concerning my appeal</u>.
>
> 5. I, Erik Robert Reyes-Aguilar, state that on August of, 2014, the Clerk of this Court mailed me a copy of the Criminal Docket Sheet which shows that counsel never filed my <u>requested</u> notice of appeal.

(Id. at 10-11 (emphasis added) (brackets (other than for "sic") and parentheses in original).)

Along with its Response, the United States included a sworn affidavit from Mr. Lowy, in which he declared:

6

1) "[a]t the conclusion of his sentencing hearing, Mr. O'Hale and [Mr. Lowy] visited with [Petitioner] in the courthouse offices of the United States Marshall's [sic] Service to discuss the outcome of [Petitioner's] case" (Docket Entry 71-1, ¶ 4);

2) "[d]uring [that] attorney-client conference . . ., [Mr. Lowy] explained to [Petitioner] that he had a legal right to appeal his sentence and adjudication of guilt" (id., ¶ 5);

3) at that time, Petitioner "expressed pleasure at having received a downward departure from the trial court judge and expressly waived his right to appeal" (id.);[3]

4) "[a]t no time during [that] conference or thereafter did [Petitioner] ever request or otherwise indicate to [Mr. Lowy] or Mr. O'Hale any desire to appeal" (id.).

---

[3] At sentencing, Petitioner faced an advisory guideline range of 108 to 135 months in prison. (Docket Entry 79, ¶¶ I.A., III.) As noted above, the Court (per Judge Eagles) imposed a prison term of 96 months, i.e., "a sentence outside the advisory sentencing guideline system." (Id., ¶ IV.D.; see also id., ¶ VI.A.-D. ("The sentence imposed . . . [was] below the advisory guideline range . . . pursuant to . . . [a] defense motion for a sentence outside the advisory guideline system to which the government objected . . . [which downward variance the Court adopted due to] the nature and circumstances of the offense and characteristics of [Petitioner] pursuant to 18 U.S.C. § 3553(a)(1) . . . [and] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A)) . . . [in light of the fact that Petitioner] ha[d] a lot of family support[,] . . . had a smaller role in the conspiracy[, and] . . . was not involved in the conspiracy as long as some of the codefendants[.]").)

7

Petitioner's Reply (which, like his Memorandum, he signed without acknowledgment of penalty of perjury (see Docket Entry 74 at 7)) contains the following statements:

1) "Petitioner reaffirms that he, in fact, <u>request</u> [sic] counsel's [sic] to file notice of appeal, <u>specifically Mr. Lowy</u>" (<u>id.</u>, ¶ 1 (emphasis added));

2) "counsel's [Mr. Lowy] failure to file a direct appeal after being <u>requested</u> to do so by his client [Mr. Reyes-Aguilar] result [sic] in a per se constitutional violation" (<u>id.</u>, ¶ 5 (brackets (other than as to "sic") and emphasis in original));

3) "it is incumbent upon counsel [Mr. Lowy] to seek to satisfy Petitioner's [Mr. Reyes-Aguilar] <u>request</u>, simply by filing the <u>requested</u> notice of appeal" (<u>id.</u> (brackets in original));

4) "assuming arguendo that [] Petitioner did not instruct counsel to file an appeal, counsel had an affirmative duty <u>to consult</u> [and] his failure to do so prejudiced [Petitioner]" (<u>id.</u> (emphasis added)); and

5) "Petitioner unequivocally spoke with counsel briefly regarding the pursuit of his appeal [but] . . . was never advised of the advantages or disadvantages of prosecuting a direct appeal . . . [and] [o]n the contrary he was wrongfully advised and to the point of being threatened not to appeal [his] sentence" (<u>id.</u>, ¶ 6).

At the start of the evidentiary hearing, Petitioner (through his appointed counsel) clarified that, as to Ground One, Petitioner

8

wished to assert a claim based only on the failure of Mr. Lowy and/or Mr. O'Hale to file a notice of appeal (not based on any failure by them to consult about an appeal). (See Docket Entry 85 at 3-4.)[4] Petitioner then took the stand. (See id. at 4.) On direct examination, he did not testify that he ever instructed Mr. Lowy and/or Mr. O'Hale to appeal. (See id. at 4-6.)[5]

On cross-examination, Petitioner similarly offered no testimony that he ever gave any such instruction. (See id. at 6-14.)[6] The undersigned Magistrate Judge then gave Petitioner a

---

[4] Even if Petitioner had not abandoned any "failure-to-consult" claim, the record (as described below) forecloses any such claim. Specifically, during the evidentiary hearing, Petitioner acknowledged that his former attorneys advised him about an appeal (see Docket Entry 85 at 5-6, 15-17) and said attorneys credibly testified that they had done so (see id. at 27-29, 37-38).

[5] In fact, on direct examination, Petitioner testified that, during his meeting with Mr. Lowy and Mr. O'Hale immediately after the sentencing hearing, he expressed no opinion about an appeal and simply left the room after they advised against an appeal. (See Docket Entry 85 at 6.) Petitioner's direct examination testimony did not describe any other appeal-related discussions he had with Mr. Lowy and/or Mr. O'Hale. (See id. at 4-6.)

[6] At one point during cross-examination, Petitioner indicated that, during a meeting prior to the sentencing hearing at which Mr. Lowy and Petitioner reviewed the Presentence Report, Petitioner informed Mr. Lowy that Petitioner wanted to appeal; however, the context of that testimony suggested that Petitioner meant that he informed Mr. Lowy of a desire to file objections to certain aspects of the Presentence Report, not to file a direct appeal. (See Docket Entry 85 at 6-7.) In response to questioning by the undersigned Magistrate Judge aimed at clarifying that issue, Petitioner confirmed that, during the meeting in question, he had expressed an interest in filing objections to the Presentence Report (not an appeal). (See id. at 14-15.)

9

further opportunity to articulate what, if anything, he said to Mr. Lowy and/or Mr. O'Hale about an appeal and Petitioner again did not testify that he unequivocally instructed them to file a notice of appeal. (See id. at 15-18.)[7] Petitioner's appointed counsel did not pursue any redirect examination. (See id. at 18.)[8]

The United States thereafter called Mr. Lowy and Mr. O'Hale as witnesses. (See id. at 18, 35.) Mr. Lowy testified that:

---

[7] Indeed, Petitioner ultimately testified that he did not know what he said to Mr. Lowy and Mr. O'Hale about an appeal. (See Docket Entry 85 at 17-18.) Although Petitioner appeared to attempt to attribute that uncertainty to the fact that he speaks English as a second language and communicated with Mr. Lowy and Mr. O'Hale on that occasion without an interpreter (see id.), the undersigned Magistrate Judge deems that suggestion of no import for two reasons. First, it does not alter the state of the record; in other words, even if lack of facility in English prevents Petitioner from knowing what he said to Mr. Lowy and Mr. O'Hale, the key point remains that Petitioner's testimony fails to show that he ever unequivocally instructed Mr. Lowy and/or Mr. O'Hale to file a notice of appeal. Second, the record does not support a finding that Petitioner's English skills rendered him incapable either of instructing Mr. Lowy and/or Mr. O'Hale to file a notice of appeal in that meeting or of knowing whether he had done so. In that regard, Mr. Lowy and Mr. O'Hale both credibly testified that Petitioner competently communicated with them in English, even about complicated subjects such as the Sentencing Guidelines. (See id. at 25-26, 36.) Further, Mr. Lowy credibly testified that he makes it a practice to obtain interpreter assistance when meeting with any clients who cannot effectively communicate in English. (See id. at 25.) Finally, on cross-examination, Petitioner testified that he personally prepared his Memorandum of Law in Support of his Section 2255 Motion (see id. at 9), and said document reflects strong English fluency (see Docket Entry 69).

[8] Nor did Petitioner present any further evidence. (See Docket Entry 85 at 18, 40.)

10

1) Mr. Lowy had more than 25 years of experience representing federal criminal defendants (see id. at 19);

2) before Petitioner's sentencing hearing, Mr. Lowy met with Petitioner to review the Presentence Report and to discuss pursuing a downward variance, but no discussion of an appeal then occurred (see id. at 19-25);

3) immediately after Petitioner's sentencing hearing, Mr. Lowy and Mr. O'Hale met with Petitioner, who thanked them for helping him obtain a downward variance (see id. at 26-27);

4) during that meeting, Mr. Lowy followed his standard practice of first describing the process Petitioner would undergo in moving from pretrial detention to a Bureau of Prisons facility and then explaining Petitioner's appeal rights (see id. at 27-28);

5) at that point, Petitioner asked about the advisability of an appeal, Mr. Lowy replied that he did not believe Petitioner had any basis for an appeal, as well as that an appeal might negatively affect the likelihood that Petitioner could obtain a later reduction for providing substantial assistance to the United States, Petitioner indicated he understood, and no further discussion of an appeal occurred (see id. at 28-29); and

6) Petitioner later contacted Mr. Lowy's office on several occasions regarding his personal property and special assessment, but never mentioned anything about an appeal (see id. at 29-34).[9]

Mr. O'Hale testified in like fashion to Mr. Lowy regarding the post-sentencing meeting, including that Petitioner expressed satisfaction with his sentence, that Mr. Lowy described Petitioner's appeal rights, that Mr. Lowy and Mr. O'Hale both advised Petitioner that they did not believe any viable appeal issues existed, and that Petitioner agreed. (See id. at 37-38.) Mr. O'Hale further denied any subsequent contact with Petitioner. (See id. at 38-39.)

"Once [a federal criminal defendant] unequivocally instruct[s] his attorney to file a timely notice of appeal, his attorney [i]s under an obligation to do so." United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007); see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). As described above, Petitioner's testimony at the evidentiary hearing, even if credited, did not establish that he "unequivocally instruct[ed] his attorney [or attorneys] to file a timely notice of appeal,"

---

[9] Mr. Lowy identified copies of two memoranda his assistant had prepared regarding such contacts, which corroborated Mr. Lowy's above-referenced account. (See Docket Entry 85 at 31-33.)

12

Poindexter, 492 F.3d at 269. Additionally (again, as noted above), both of Petitioner's former attorneys testified that Petitioner gave no such instruction. To the extent any material conflict exists between the testimony of Petitioner and of Mr. Lowy and Mr. O'Hale, the Court should credit the latter over the former.

First, the record (discussed above) reflects that, at the evidentiary hearing, Mr. Lowy and Mr. O'Hale testified consistently with the sworn statement Mr. Lowy submitted before the hearing. By contrast, the quotations from Petitioner's pre-hearing filings set out in the preceding discussion present an entirely different account from the one he offered at the hearing. Specifically, whereas Petitioner's in-court testimony described neither any concrete instruction he gave to his former attorneys about an appeal nor any specific request he made to them about that subject, Petitioner's earlier filings repeatedly asserted that he "instructed" counsel to file an appeal or "requested" that they do so (see Docket Entry 61, ¶ 12(Ground One); Docket Entry 69, ¶¶ 4, 5, 7-9, 16, 21-23; Docket Entry 74, ¶¶ 1, 5). Such stark inconsistencies between Petitioner's pre-hearing statements and his hearing testimony "severely, if not completely, erode[]" his credibility. Diaz v. United States, Nos. 7:09CR100D, 7:11CV43D, 2014 WL 7384974, at *7 (E.D.N.C. Dec. 29, 2014) (unpublished).[10]

---

[10] Significant conflicts also exist between Petitioner's
(continued...)

13

Further, "there is no evidence that [Petitioner's former attorneys] had any motive to refuse any request by [him] to file an appeal . . . ." Id. at *6. Petitioner, however, "had a strong incentive to lie . . . about his purported request for an appeal. That claim represents perhaps the only remaining avenue open to [him] to escape service of [his] prison term . . . ." Id. at *8.

Finally, both Mr. Lowy and Mr. O'Hale possess substantial experience as criminal defense attorneys and thus would know about their obligations concerning an appeal. Both attorneys testified in a straight-forward manner about their post-sentencing meeting with Petitioner and offered descriptions consistent with what one reasonably would expect to have occurred given the relevant circumstances. Such considerations support the crediting of their testimony. See id. at *5.

CONCLUSION

Petitioner has failed to establish that his former attorneys provided ineffective assistance as to an appeal.

---

[10](...continued)
various pre-hearing filings; for example, his Memorandum of Law in Support of his Section 2255 Motion specifically identifies Mr. O'Hale (and only Mr. O'Hale) as the attorney who Petitioner instructed to file an appeal (see Docket Entry 69, ¶¶ 7-9, 16), but Petitioner's affidavit expressly states that he "informed both counsels that [he] wanted to appeal" (id. at 10) and Petitioner's Reply singles out Mr. Lowy alone as the attorney who Petitioner directed to file notice of appeal (see Docket Entry 74, ¶ 5).

14

**IT IS THEREFORE RECOMMENDED** that Ground One of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Docket Entry 61, ¶ 12(Ground One)) be denied without issuance of a certificate of appealability based on the following findings of fact and/or conclusions of law:

1) in Ground One, Petitioner asserts a claim for ineffective assistance of counsel only for failure to file a timely notice of appeal when instructed to do so and does not pursue a claim for ineffective assistance of counsel for failure to consult about an appeal;

2) Petitioner did <u>not</u> unequivocally instruct his counsel to file a timely notice of appeal and thus his failure-to-appeal, ineffective assistance of counsel claim fails for lack of merit; and

3) if Petitioner had pursued a failure-to-consult, ineffective assistance of counsel claim, that claim would fail for lack of merit because Petitioner's counsel did properly consult with him about an appeal.

                                            /s/ L. Patrick Auld
                                                **L. Patrick Auld**
                                **United States Magistrate Judge**

April 24, 2015